IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CR-280-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | ORDER |
| SHARIF EZZAT, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress statements allegedly obtained in violation of the Fifth Amendment (DE # 33). The government responded in opposition, and the motion was referred to United States Magistrate Judge James E. Gates for evidentiary hearing and a memorandum and recommendation ("M&R") pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge recommended the motion to suppress be denied, and defendant did not timely file any objection. For the reasons that follow, the court adopts the magistrate judge's recommendation as its own and denies defendant's motion.

## STATEMENT OF THE CASE

On August 18, 2010, the grand jury returned an indictment charging defendant, a federal inmate, with possession of prohibited objects in violation of 18 U.S.C. § 1791(a)(2). This charge relates to defendant's alleged possession of three shanks (*i.e.*, homemade knives) uncovered during a search of his wheelchair on September 13, 2009.

On January 31, 2011, defendant filed this motion to suppress certain inculpatory statements made to his assigned case manager, Brandi Kaz ("Kaz"). He asserts that he was not given the

warnings provided for by Miranda v. Arizona, 384 U.S. 436 (1966). The government, opposing defendant's motion, argues that Kaz was not required to give defendant any Miranda warnings because defendant made the inculpatory statements without any prior questioning or solicitation.

The magistrate judge, in his M&R filed May 5, 2011, agreed with the government. The magistrate judge concluded that, although confined in a federal penitentiary, defendant was not in "custody" for purposes of Miranda. The magistrate judge also concluded that, because the interaction between defendant and Kaz was one voluntarily initiated by defendant, Miranda's "interrogation" requirement also was not met. The magistrate judge recommended denying defendant's motion, and defendant did not timely object to this recommendation.

## STATEMENT OF THE FACTS

The facts, as developed by the magistrate judge at evidentiary hearing held March 16, 2011, are as follows:

> At all times relevant to the motion, Kaz was assigned as defendant's case manager [at Federal Correctional Institution II-Medium in Butner, North Carolina ("FCI II")]. The duties of a case manager include processing inmate transfers, ensuring that an inmate is housed in a facility appropriate to his security level, performing the biannual reviews required for each inmate, and assuring that inmates are housed separately when required.
>
> On 13 September 2009, Kaz was in the office of a lieutenant with the Special Investigation Unit when a wheelchair used by defendant was brought in to be searched. The search was prompted by information obtained by one of the corrections officers that shanks, which are homemade weapons, were being held in wheelchairs, including defendant's. As part of her general duties as a staff member, Kaz conducted a search of the wheelchair. During the search, Kaz found two shanks inside the frame of the wheelchair and one in the seat cushion. Kaz then put the shanks in a secured lock box for the Special Investigation Unit and wrote an incident report for the violation of the institutional rule against possession of weapons. Pursuant to FCI II policy, Kaz, as the author of the incident report, was not permitted to further participate in the investigation of the violation.

2

Following the search on 13 September 2009, [Lieutenant Scott Allen] Gregory [("Gregory")] issued an Administrative Detention Order placing defendant in administrative detention in a special housing unit ("SHU") until the conclusion of the investigation into the weapons possession violation. Except for time defendant spent in the Federal Medical Center, he was housed in a SHU until his disciplinary hearing on the weapons possession violation on 13 May 2010. On or about 17 September 2009, Gregory, whose duties include investigating incidents at FCI II that might be referred out for criminal prosecution, referred the incident report to the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office in Raleigh, North Carolina for possible prosecution. On 9 November 2009, the FBI notified Gregory that the United States Attorney's Office had agreed to present the case to the Grand Jury. At no time did the FBI direct Gregory or anyone else at FCI II to question defendant regarding the case or to otherwise conduct an investigation. Neither did the FBI conduct any investigatory activities at FCI II.

Although Kaz remained assigned to defendant as his case manager following the search in September 2009, she did not speak to him again until 27 April 2010. Her reasons for not communicating with him during this period were that she feared he was angry at her because of her involvement in the search and because she did not want to jeopardize the integrity of any ongoing investigation into inmates' possession of weapons.

On 27 April 2010, Kaz was informed by her unit manager that defendant had asked to speak with her. As part of her duties as a case manager, Kaz is required to perform weekly rounds in the SHU during which she goes door to door to determine if any of the inmates assigned to her have any issues or need to speak with her. Accordingly, in response to defendant's request, Kaz stopped at defendant's cell in the SHU during her rounds. Defendant rolled his wheelchair to the door and initiated the conversation saying, "Hi, how are you? Why haven't you come seen [sic] me?" Kaz told him that she thought he would be angry with her. Following some additional general conversation, defendant told her, "I ain't mad at you, I know somebody snitched on me." Kaz responded, "What makes you think somebody snitched on you, I was doing my job." Defendant then stated, "Come on Kaz, how would you know those were in there, I know somebody snitched on me." Kaz did not administer Miranda warnings to defendant prior to the exchange with defendant.

On 8 March 2011, Kaz was in her office when she was informed by her secretary that defendant wanted to speak with her. Kaz told her secretary to tell defendant that it was not open house, which is a block of time during the day when inmates can meet with case managers. When defendant insisted that it was an urgent matter, Kaz permitted the meeting. During it, defendant told Kaz that he wanted to dispute a rumor that she would be assaulted by him or that he would put a "hit" on her if he was ultimately convicted of the weapons possession charge. Defendant reiterated

3

that he knew someone had snitched on him and that he was angry with the snitch, but not with her. Kaz informed defendant that she was not going to discuss the case with him.

M&R at 2-4 (some alterations omitted).

## DISCUSSION

A. Standard of Review

The district court reviews *de novo* only those portions of a magistrate judge's M&R to which objections are filed. 28 U.S.C. § 636(b). Absent a timely objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B. Analysis

In Miranda, the Supreme Court held that "the prosecution may no use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." See 384 U.S. at 444. "Part of the protection afforded by Miranda is the requirement that prior to any custodial interrogation, the police inform the suspect that he has the right to remain silent and the right to the presence of an attorney." United States v. Blake, 571 F.3d 331, 338 (4th Cir. 2009). The warnings need only be given when a defendant is both in custody and subject to interrogation by law enforcement officers. See generally Thompson v. Keohane, 516 U.S. 99, 112 (1995) (defining "custody"); Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980) (defining "interrogation").

4

The magistrate judge concluded that defendant was neither in custody nor subject to interrogation. As to the issue of custody, the magistrate judge noted that "lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures identified in Miranda," see Maryland v. Shatzer, 559 U.S. ----, 130 S. Ct. 1213, 1224 (2010), although the Miranda custody test may be met where "a prisoner is removed from the general prison population and taken to a separate location for questioning," see id. at 1225 n.8. The magistrate judge noted that defendant, although housed away from the general population in SHU, made the statements during the course of his "normal routine" in prison. As such, he concluded that under Shatzner, defendant was not subject to coercive custody. That conclusion is not clearly erroneous.

As to the issue of interrogation, the magistrate judge noted that a voluntary encounter initiated by defendant for his own purposes and subject to termination at his election is not an interrogation under Miranda. See, e.g., United States v. Turner, 28 F.3d 981, 984 (9th Cir. 1994); Leviston v. Black, 843 F.2d 302, 304 (8th Cir. 1988). The magistrate judge also noted that interrogation requires actual police questioning, or its functional equivalent, meaning police action "reasonably likely to elicit an incriminating response from the suspect." See Innis, 446 U.S. at 300-01. In light of the voluntary nature of the encounter between defendant and Kaz, and the lack of any statements by Kaz reasonably likely to elicit an incriminating response, the magistrate judge concluded that defendant was not subject to interrogation. As with the magistrate judge's custody finding, that conclusion also is not clearly erroneous.

Because defendant was not in "custody" and was not subject to police interrogation, he is not entitled to suppression of his allegedly inculpatory statements under the Miranda rule. Defendant's motion to suppress is accordingly DENIED.

5

## CONCLUSION

Upon a careful review of the M&R, the court discerns no clear error in the magistrate judge's factual findings or legal analysis, and accordingly ADOPTS the recommendation of the magistrate judge (DE # 58) as its own. Defendant's motion to suppress (DE # 33) is DENIED.

SO ORDERED, this the 25th of May, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge